**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

|                              |     |                              |
|------------------------------|-----|------------------------------|
| In re:                       | )   |                              |
|                              | )   |                              |
|                              | )   |                              |
| Elnora Macklin,              | )   | Case No.: 05-12750-BGC-13    |
|                              | )   |                              |
|             Debtor.          | )   |                              |
|                              | )   |                              |
|                              |     |                              |
| Elnora Macklin,              | )   |                              |
|                              | )   |                              |
|             Plaintiff,       | )   |                              |
|                              | )   |                              |
| vs.                          | )   | A. P. No.: 08-00013-BGC-13   |
|                              | )   |                              |
| Jefferson Finance, LLC,      | )   |                              |
|                              | )   |                              |
|             Defendant.       | )   |                              |

**Memorandum Opinion on
MOTION FOR SUMMARY JUDGMENT**[1]

**I. Background**

The defendant's Motion for Summary Judgment is the latest phase in a lengthy dispute between these parties. The following is a summary of that dispute.

The movant holds mortgage liens on property owned by the debtor.  On August 25, 2006, the movant filed a Motion for Relief From Stay in the debtor's main case,  Docket No. 57, seeking permission to foreclose on those mortgages.  A hearing was held on December 19, 2006.  At the hearing, the parties announced that they had settled the matter, and that movant's counsel would submit a proposed consent order. Docket No. 79.

On April 5, 2007, rather than filing a settlement document, movant's counsel filed a Request to Re-Set Motion for Relief from Stay Put Back on Calendar. Docket No. 84. Movant's counsel represented, "The issues in this case have not been resolved." Id.

---

[1] This Memorandum Opinion constitutes findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable here pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

A hearing on the Request to Re-Set was held on May 1, 2007. At that hearing, the parties again announced that the matter had been settled, and that movant's counsel would submit a proposed consent order. Proceeding No. 99.

The Court received the parties' Consent Order and entered it on May 4, 2007. Proceeding No. 101. That order provided for circumstances under which the movant would be entitled to relief from the stay. The order included:

> Upon any failure to meet any one of the above conditions or make any of the above payments or other mortgage charges or obligations, including but not limited to timely payment of any valorem taxes, late fees, insurance, interest, legal fees and expense, as they come due, the Court shall enter an order granting Jefferson Finance, LLC relief from the stay upon Jefferson Finance's written notice and request to the Court. The Debtor's counsel shall be copied with such notice and request and may file an objection thereto if the failure of a condition did not, in fact, occur.

Consent Order at 2. Proceeding No. 101.

On August 31, 2007, contending that the debtor violated the May 4, 2007, consent order, the movant filed a Request for Immediate Order of Relief from Stay. Docket No. 109.[2] Specifically, the movant alleged the debtor: (1) failed to make the agreed upon "catch-up" payments; (2) failed to provide proof of insurance; (3) failed to make her regular mortgage payments; and (4) failed to make her Chapter 13 plan payments.

The debtor responded twice. On September 25, 2007, the debtor filed her Objection to Motion to Impose Automatic Stay Alternative Objection to Motion for Relief from Stay. Proceeding No. 113. In this response, the debtor argued that the movant had verbally agreed to allow her until October 16, 2007, to cure the defaults outlined in its request. On November 6, 2007, the debtor filed her Debtor's Response to Creditor, Jefferson Finance LLC's Motion for Relief from Stay Regarding Property Located at 828 Spring Street, Birmingham, AL 35214 and 119 Avenue Y, Pratt City, Birmingham, AL 35214. Proceeding No. 119. In this response, the debtor argued that the movant had not properly applied her mortgage payments, and that the movant took advantage of her because of her, "age and ... [her] lack of financial savvy...." Id. (parenthetical added). She added that there was ample equity in the two properties to protect the movant's interests. The debtor did not suggest in either response that she had not violated the terms of the consent order.

---

[2] Docket entry No. 109 reads, "Motion to Impose Automatic Stay Due to Debtor's Failure to Comply with Court Order of May 3, 2007 Filed by Movant Jefferson Finance, LLC (Lavette, John) (Entered: 08/31/2007);" however, the document filed is the Request for Immediate Order of Relief from Stay filed on August 31, 2007.

2

A hearing on the Request for Immediate Order of Relief from Stay was eventually scheduled for January 16, 2008.  Docket No. 137.

The debtor-plaintiff filed the pending complaint against Jefferson Finance, LLC, on January 15, 2008, one day before that scheduled hearing.  That complaint became the pending Adversary Proceeding No. 08-00013.  A.P. Docket No. 1.

The hearing on the Request for Immediate Order of Relief from Stay was held on January 16, 2008.  At that hearing, the debtor asked the Court to delay the hearing of the motion for relief from stay until she had an opportunity to present her evidence on what she characterized as some related matters.  Those matters included the ones from the Complaint filed against Jefferson Finance, LLC, one day earlier.

The Court denied the debtor's request and held the hearing on the Request for Immediate Order of Relief from Stay.  The only testimony offered was by Mr. Ward Bailey, the movant's managing member.  Despite being present in the courtroom, the debtor did not testify.

The plaintiff amended her complaint in the pending A.P No. 08-00013 on March 19, 2008.  A.P. Docket No. 11.

On May 29, 2008, the Court entered an Order Granting Relief from Stay in the debtor's main case.  Docket No. 166.  That order granted both the movant's 2007 request for relief from the stay against the debtor and the relief requested in its Request for Immediate Order of Relief from Stay.[3]

The matter before the Court now is the Jefferson Finance, LLC's Pretrial Statement and Motion for Summary Judgment filed on January 14, 2009, seeking judgment as a matter of law on the complaint filed by the plaintiff on January 15, 2008.

After notice, the Motion for Summary Judgment was heard on February 4, 2009.  Appearing were Mr. Jerome Tucker, the attorney for the plaintiff; Mr. John R. Lavette, the attorney for the defendant; and Ms. Mary Fallaw, the attorney for the Standing Chapter 13 Trustee.

The matter was submitted on the affidavit of Mr. Ward Bailey; Mr. Bailey's testimony from the hearing on January 16, 2008, on the defendant's motion for relief from the stay; the affidavit of Ms. Elnora Macklin; Ms. Macklin's deposition; the exhibits attached to and included with the defendant's motion for summary judgment; the pleadings, motions, and briefs filed by the parties; the arguments of counsel; the records in this adversary proceeding and Bankruptcy Case No. 05-12750-BGC-13.

---

[3] The Court adopts that order as support for the findings and conclusions here.

3

## II.  The Real Estate in Dispute

### A.  Property Located at 119 Avenue Y, Birmingham, Alabama 35214.

The defendant Jefferson Finance, LLC and Ms. Macklin entered into a purchase money mortgage loan agreement on December 4, 2001.  At the time, the plaintiff was in her late seventies or early eighties.  The mortgage was secured by property located at 119 Avenue Y, Birmingham, Alabama 35214.  The debtor borrowed $19,000 at an annual interest rate of 12 percent.  Her monthly payment was $230.  The plaintiff's intention, which she shared with Mr. Bailey prior to receiving the loan, was to lease the property.

After about a year from acquiring the property, the plaintiff has continuously rented it to a paying tenant for $300 to $350 per month.  According to her deposition, she has never occupied the property and never intended to occupy it.

In its proof of claim filed in the plaintiff's bankruptcy case, the defendant estimated the value of the property to be $33,000.  At the hearing on the defendant's motion for relief from the stay on January 16, 2008, Mr. Bailey testified that the property was worth $33,000 at the time of the hearing.

### B.  Property Located at 828 Spring Street, Birmingham, Alabama 35214.

On June 7, 2005, the defendant made a loan to Ms. Macklin and her sister, Bernice Barnfield, on another piece of real estate.[4]  At the time, the plaintiff was in her early eighties.  That loan was secured by a mortgage on property jointly owned by Ms. Macklin and Ms. Barnfield located at 828 Spring Street, Birmingham, Alabama 35214.  They acquired the property by inheritance.  Their purpose in obtaining the loan was to pay certain debts of the decedent's estate that otherwise would have had to have been paid through liquidation of the property.  Their intention, which they shared with Mr. Bailey prior to receiving the loan, was to lease the property.

Ms. Macklin and Ms. Barnfield borrowed $10,600 at an annual interest rate of 19.75 percent.  Their monthly payment was $235.  In the proof of claim filed in the plaintiff's bankruptcy case, the defendant estimated the value of the property at

---

[4] Ms. Barnfield filed her own Chapter 13 case on April 18, 2009.  Case No. 09-02363-BGC13.  Numerous matters involving many of the issues before the Court in the instant case are scheduled for trial before this Court in that case on October 7, 2009.  Those matters include: Docket No. 40, the Debtor's Objection to Claim #3 of Jefferson Finance, LLC; Docket No. 28, a Motion for Relief from Stay from Jefferson Finance, LLC; Docket No. 45, a Renewed motion for relief From Stay from Jefferson Finance, LLC; Docket No. 29, an Objection to Confirmation from Jefferson Finance, LLC; and Docket No. 10, the Confirmation Hearing on the debtor's proposed Chapter 13 plan.

4

$65,000.  In contrast, at the hearing on the defendant's motion for relief from the stay, conducted on January 16, 2008, Mr. Bailey testified that the property was worth between $20,000 and $25,000 when the defendant made the loan and was worth approximately the same at the time of the hearing.

Neither Ms. Macklin nor Ms. Barnfield has ever occupied the property and according to the plaintiff's deposition, neither had the intention to do so.  Since acquiring the property they have allowed a  granddaughter to live in it continuously, rent free.

### III.  The Plaintiff's Complaint

### A.  Truth in Lending Act

The plaintiff contends that the defendant violated the Truth in Lending Act in connection with both mortgage loans. The plaintiff alleges that the defendant failed to provide her with the disclosures required by 15 U.S.C. § 1638 and 12 C.F.R. § 226.18, or failed to provide those disclosures in the form required by 15 U.S.C. § 1632 and 12 C.F.R. § 226.[5]

The plaintiff also contends that she had a right to rescind the June 7, 2005, mortgage loan by virtue of 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(a).  She alleges that the defendant violated those provisions by failing to provide her with notice of her right to rescind as required by 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(b), or failed to provide that notice in the form and manner required by said 12 C.F.R. § 226.23(b).

### B.  Home Ownership and Equity Protection Act

The plaintiff also contends, in regard to both mortgage loans, that she was entitled to the disclosures required by the Home Ownership and Equity Protection Act. 15 U.S.C. § 1639; 12 C.F.R. § 226.32.  She claims that she was entitled to those disclosures in connection with the June 7, 2005, mortgage loan because the interest rate of 19.75 percent  was eight percent more than the applicable Treasury bond rates on the 15th day of the month before the month in which her application for the

---

[5] The Court inferred what applicable statutes and regulations the plaintiff contends were violated because the debtor's original complaint did not identify those specific statutory provisions and regulations.  In that complaint, the debtor elected instead to aver generally that the defendant failed to provide her with documents which reflected the cost of the credit received by her using the standardized format and terminology prescribed by the Truth in Lending Act, and that the defendant failed to provide her with documents reflecting the annual percentage rate, finance charge, amount financed, and total payments for either mortgage loan. The debtor amended her complaint on March 19, 2008, Docket No. 11, and provided some additional, but not all necessary, information.

extension of credit was received by the defendant. She does not explain why she was entitled to those disclosures in connection with the December 4, 2001, mortgage loan.

She makes the blanket allegation that the defendant violated the provisions of 15 U.S.C. § 1639, and 12 C.F.R. § 226.32 by failing to provide her with those disclosures. However, she did not explain how the defendant specifically violated that statute and rule, or what the defendant specifically failed to disclose, or what particular provisions of that statute and rule were violated by the defendant's alleged malfeasance.

The plaintiff also contends that the defendant failed to provide her with the documents required by 12 C.F.R. § 226.31. Once again, she did not explain how the defendant specifically violated that rule, or what specific documents or information the defendant failed to provide, or what particular provisions of that rule are implicated by the defendant's alleged malfeasance.

The plaintiff also contends that the defendant violated 15 U.S.C.A. § 1639(h) by, "engag[ing] in a pattern and practice of extending credit to consumers under mortgages based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment with regard to both the December 4, 2001, and June 7, 2005 mortgages," and by, "mak[ing] the loans because of the considerable amount of equity in the homes without accessing the Plaintiff's ability to repay said loan...." Amended Complaint at 7, A.P. Docket No. 7 (parentheticals added).

### C. Equal Credit Opportunity Act

The plaintiff also contends that the defendant violated the Equal Credit Opportunity Act in connection with both mortgage loans. 15 U.S.C. §§ 1691a-1691f; 12 C.F.R. §§ 202.1- 202.16. Again, the plaintiff does not specify, explain, or describe how the defendant violated any of the statutes which comprise that legislation or the regulations promulgated pursuant to it, or what particular provisions of those statutes and regulations were violated, or what conduct of the defendant may have violated any provision of those statutes and regulations.

### D. Real Estate Settlement Procedures Act of 1974

The plaintiff also contends that the defendant violated the Real Estate Settlement Procedures Act of 1974 in connection with both mortgage loans. 12 U.S.C. §§ 2601-2617; 12 C.F.R. §§ 3500.1-3500.23. Again, the plaintiff does not specify, explain, or describe how the defendant violated any of the statutes which comprise that legislation or the regulations promulgated pursuant to it, or what particular provisions of those statutes and regulations were violated, or what conduct of the defendant may have violated any provision of those statutes and regulations.

### E. Omnibus Allegation

The plaintiff's final contention is the omnibus allegation that, "the Defendant made the loans because of the considerable amount of equity in the homes without accessing the Plaintiff's ability to repay said loan which is in direct violation of federal laws, state unfair trade practice laws, usury, unconscionability, and fraud." Amended Complaint at 7, A.P. Docket No. 7.

The plaintiff did not: specify what federal laws were violated by that conduct; specify what "state unfair trade practice laws" were violated by that conduct; specify what "usury" laws were violated; specify what law, either statutory or common, renders that conduct actionable pursuant to an "unconscionability" standard; identify any misrepresentations, deceptions or fraudulent nondisclosures made or orchestrated by the defendant that would be actionable as fraud under Alabama law; or otherwise elaborate further on that multifarious allegation.

### IV. The Defendant's Motion for Summary Judgment

In support of its summary judgment motion, the defendant submitted the affidavit of Mr. Ward Bailey, the defendant's managing member, who personally dealt with the plaintiff in connection with the closing of both mortgage loans; the plaintiff's deposition; the answers given by the plaintiff to the defendant's interrogatories; and the documents executed by the plaintiff in connection with both mortgage loans. In response, the plaintiff submitted her own affidavit and asked the Court to take notice of the testimony given by Mr. Bailey at the hearing held on January 16, 2008, on the defendant's motion for relief from the stay.

### V. Legal Framework: Summary Judgment Standards

Under Fed.R.Civ.P. 56(c), made applicable by Bankruptcy Rule 7056 to bankruptcy adversary proceedings, a moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The framework in this Circuit for making that determination is outlined in the Eleventh Circuit Court of Appeals decision in Fitzpatrick v. City of Atlanta, 2 F.3d 1112 (11th Cir. 1993). The Court applied that standard in this proceeding.

Case 08-00013-BGC    Doc 60    Filed 09/23/09    Entered 09/23/09 07:55:56    Desc Main
Document    Page 7 of 27

# VI. Discussion

## A. The debtor's contention that
## the 15 U.S.C. § 1638 "Truth in Lending" disclosures were not made

### 1. The disclosures were not required.

The disclosure requirements of 15 U.S.C. § 1638 apply only to "consumer credit transaction[s]." 15 U.S.C. § 1638(a) (parenthetical added). Section 1602(h) reads:

> The adjective 'consumer', used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

15 U.S.C. § 1602(h).

According to the staff of the Board of Governors of the Federal Reserve's official interpretation, "Credit extended to acquire, improve, or maintain rental property (regardless of the number of housing units) that is not owner-occupied is deemed to be for business purposes," for purposes of the Truth and Lending Act. Supplement I to Part 226 – Official Staff Interpretations, Effective January 1, 2009, 12 C.F.R. Pt. 226, Supp. I, Subpart A, Section 226.3–Exempt Transactions, 3(a) Business, commercial, agricultural, or organizational credit, paragraph 3.

In addition, "Credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes, or to government or governmental agencies or instrumentalities, or to organizations," are expressly exempt from the disclosure requirements of section 1638. 15 U.S.C. § 1603(1).

According to Mr. Bailey's affidavit: (1) the December 4, 2001, mortgage loan was a purchase money loan which permitted the debtor to purchase the property located at 119 Avenue Y, Birmingham, Alabama 35214; and (2) the June 7, 2005, mortgage loan was to provide the debtor and her sister with the funds to pay off debts which encumbered their inheritance interests in the property located at 828 Spring Street, Birmingham, Alabama 35214.

In regard to the plaintiff's intent for the use of the properties, Mr. Bailey represented that the debtor told him that she intended to rent both of the properties to others and did not intend to live in either of them.

Similarly, in her April 14, 2008, deposition, the debtor admitted: (1) she purchased both properties with the express intent of renting them; (2) she never

8

intended to occupy either of the properties; (3) she has in fact never occupied either of the properties; (4) she has rented the 119 Avenue Y property for $300 to $350 continuously since about a year after she purchased it; (5) her adult granddaughter and the latter's children have occupied the Spring Street property since 1999, before she and her sister acquired it by inheritance; (6) that subsequent to the acquisition of the Spring Street property by the debtor and her sister following their receipt of the loan on June 7, 2005, the plaintiff permitted her granddaughter and the latter's children to continue to occupy the property in return for the granddaughter's promise to watch after the property, in lieu of rent, and to begin paying rent when she becomes financially able to do so; and (7) her granddaughter told her that she is now employed and has promised to start paying $400 a month for rent.

As the above demonstrates, the debtor purchased both properties for business purposes, did not intend to occupy either of them, and has in fact not occupied them. Consequently, the defendant was not required to make the disclosures described in section 1638 to the debtor in connection with either of the loans.

Therefore, based on the above, the defendant is entitled to summary judgment as a matter of law in regard to plaintiff's contentions that the defendant violated the Truth in Lending Act in connection with both the December 4, 2001, mortgage loan and the June 7, 2005, mortgage loan, by failing to provide her with the disclosures required by 15 U.S.C. § 1638 and 12 C.F.R. § 226.18, or by failing to provide those disclosures in the form required by 15 U.S.C. § 1632 and 12 C.F.R. § 226.

## 2. The disclosures were made.

Notwithstanding the above, the evidence demonstrates that the necessary disclosures were made. Mr. Bailey stated in his affidavit that in connection with both loans, even though the disclosures were not legally required, he provided the ones required by 15 U.S.C. § 1638 and 12 C.F.R. § 226.18 in the form required by 15 U.S.C. § 1632 and 12 C.F.R. § 226.18.

Similarly, the debtor admitted in her deposition that at the closing of both the December 4, 2001, mortgage loan and the June 7, 2005, mortgage loan, she received and signed the Truth in Lending disclosure statements.

Those statements, which appear as Exhibits 11 and 20 to the plaintiff's deposition and are entitled "Federal Truth-in-Lending Disclosure Statement For Use with Fixed-Rate, GPM, or Balloon Mortgage Notes," are in fact in the format specified in 12 C.F.R. Pt. 226, Appendix H by the Board of Governors of the Federal Reserve for making the disclosures required by 15 U.S.C. § 1638 and 12 C.F.R. § 226.18. Each

9

discloses, with respect to the transaction to which it pertains, all of the things required by 15 U.S.C. § 1638 and 12 C.F.R. § 226.18.[6]

In addition, the debtor admitted in her deposition that she received and signed the documents entitled "Sales Closing Statement" dated December 4, 2001, and "Amount Financed Itemization" dated June 7, 2005, attached to the plaintiff's deposition as Exhibits 12 and 18. Each of those documents contains, with respect to the transaction to which it pertains: (1) a written itemization of the "amount financed" showing the amount that would be paid directly to the plaintiff; (2) the amount that would be credited to her account to discharge obligations owed to the defendant; and (3) the amounts that would be paid to third persons by the defendant on her behalf, together with an identification of, or reference to, the third person and the total amount of such charges.

The plaintiff was unable, in either her complaint, or her deposition, or her answers to the interrogatories propounded by the defendant, to identify what legally required information the defendant failed to disclose or exactly how the defendant's disclosures ran afoul of the disclosure statute and rules. Moreover, it is very clear from the debtor's own admissions that she actually received the Truth in Lending disclosures required by 15 U.S.C. § 1638 and 12 C.F.R. § 226.18, despite the contrary contentions in her complaint.

Therefore, based on the above, even if the defendant had been legally required to make the disclosures, the defendant is entitled to summary judgment as a matter of law in regard to the plaintiff's contentions that the defendant violated the Truth in

_____

[6] Those include: the defendant's identity; the "amount financed", using that term; a statement of the plaintiff's right to obtain, upon a written request, a written itemization of the amount financed, including spaces for a "yes" and "no" indication to be initialed by her; the "finance charge", not itemized, using that term; the finance charge expressed as an "annual percentage rate", using that term; the sum of the amount financed and the finance charge, which is termed the "total of payments"; the number, amount, and due dates of payments scheduled to repay the total of payments; descriptive explanations of the terms "amount financed", "finance charge", "annual percentage rate", and "total of payments"; with respect to the Avenue Y property, a statement that a security interest was being taken in that property which was being purchased as part of the credit transaction; with respect to the Spring Street property, a statement that a security interest was being taken in that property which was not being purchased as part of the credit transaction; the dollar charge and percentage amount which could be imposed by the defendant solely on account of a late payment; a statement indicating that the plaintiff would not be entitled to a rebate of any finance charge upon refinancing or prepayment in full; a statement that the plaintiff should refer to the appropriate contract document for any information such document provides about nonpayment, default, the right to accelerate the maturity of the debt, and prepayment rebates and penalties; and a statement indicating that a subsequent purchaser or assignee of the consumer could assume the debt obligation on its original terms and conditions.

10

Lending Act in connection with both the December 4, 2001, mortgage loan and the June 7, 2005, mortgage loan, by failing to provide her with the disclosures required by 15 U.S.C. § 1638 and 12 C.F.R. § 226.18, or failing to provide them in the form required by 15 U.S.C. § 1632 and 12 C.F.R. § 226.

### B. The debtor's contention that she failed to receive notice of her 15 U.S.C. § 1635(a) right to rescind

The plaintiff also contends she had a right to rescind the June 7, 2005, mortgage loan under 15 U.S.C. § 1635(a), but that the defendant violated that statute by failing to provide her with notice of her right to rescind as required by 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(b), or that the defendant failed to provide her that notice in the form and manner required by said 12 C.F.R. § 226.23(b).

Section1635(a) provides:

> Except as otherwise provided in this section, in the case of any **consumer credit transaction** (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the **principal dwelling of the person** to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a)(emphasis added).

By its terms, section 1635(a) extends the right of rescission to "consumer credit transactions" only, and it extends that right only when the retained security interest will be held in the "principal dwellings" of the borrower. As explained above, the debtor admitted that it was never her intent to occupy either of the properties as her principal dwelling, and she has not occupied either of them as her principal dwelling. Moreover, it was her express intent, when she took out the loans, to rent both properties for profit, and she has, in fact, successfully leased one for a number of years and let the other to her granddaughter in exchange for the latter's commitment to look after it and at some

11

time pay rent. Hence, neither transaction constituted a "consumer credit transaction" and neither transaction involved, or resulted in, the defendant acquiring or retaining a security interest in the <u>plaintiff's</u> home. Consequently, the plaintiff did not possess the right, under section 1635(a), to rescind either transaction and, therefore the defendant was under no obligation to provide her with notices of any such non-existent right of rescission.

Therefore, based on the above, the defendant is entitled to summary judgment as a matter of law with respect to the plaintiff's contention that she was entitled to rescind the transactions by virtue of section 1635(a) and was entitled to receive the notices of that right to rescind specified in that statute.

### C.  The plaintiff's contentions that the defendant violated the Home Ownership and Equity Protection Act

The plaintiff also contends that the defendant violated certain provisions of the truth in lending statutes that were added by the Home Ownership and Equity Protection Act, and the rules promulgated in accordance with that statute, namely 15 U.S.C. § 1639; 12 C.F.R. § 226.32 and 12 C.F.R. § 226.31.  In the answers she gave in response to the interrogatories propounded by the defendant, the plaintiff claimed specifically that the defendant violated section 1639(a)(1) by failing to provide her with the disclosure required by section 1639(a)(1)(A).  That disclosure was, "You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application." <u>Id</u>.  She also included the disclosure required by 1639(a)(1)(B), that is, "If you obtain this loan, the lender will have a mortgage on your home.  You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan." <u>Id</u>.

The plaintiff claims further that the defendant violated section 1639(h) by making a "high cost" loan to her without regard to her ability to repay it, and the defendant should have know the plaintiff did not have the financial ability to repay the loan.  She claims this is evinced by the defendant's alleged failure to obtain information from her with respect to her ability to pay the loans.  The plaintiff claims that the defendant violated rule 226.31(b) by not making the disclosures required by section 1639(a)(1)(A)&(B), and by not making them, "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.R.F. § 226.31(b).  The plan also contends the defendant violated Rule 226.31(c)(i) by not making those disclosures "at least three business days prior to consummation of [the] mortgage transaction[s]...." 12 C.F.R. § 226.31(c)(i) (parenthetical added).

Again, the statutes and regulations the plaintiff invokes do not apply here.

Section 1639 and Rule 226. 32 by their express terms apply only to loans described in <u>15 U.S.C. § 1602aa</u>.  Section 1602(aa)(1) provides, "A mortgage referred to in this subsection means a <u>consumer credit transaction</u> that is secured by the

12

consumer's <u>principal dwelling</u>, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan...." 15 U.S.C. § 1602(aa)(1)(emphasis added). In addition, applicable regulations read, "Except as provided in paragraph (a)(2) of this section, the requirements of this section apply to a consumer credit transaction that is secured by the consumer's principal dwelling...." 12 C.F.R. § 226.32(a)(1).

As explained above, neither the December 4, 2001, loan nor the June 7, 2005, mortgage loan constituted a "consumer credit transaction" because the loan proceeds from neither were used or intended to be used, "primarily for personal, family, or household purposes," 15 U.S.C. § 1602(h). The plaintiff obtained both loans for the express purpose of acquiring properties that she intended to lease to others rather than to live in. In fact, she leased or lent both properties and has not resided in either. Moreover, in regard to application of the statutes and regulations, neither loan resulted in the defendant's acquisition or retention of a security interest in the plaintiff's <u>principal dwelling</u> because the plaintiff never intended to dwell in either property and has not, in fact, ever dwelled in either property.

Two conclusions are unavoidable. One, none of the provisions of section 1639 relied on by the plaintiff are applicable to either of the mortgage loans made to her by the defendant. Two, because those provisions do not apply, the defendant did not, and could not, have violated any of those provisions in connection with either of those loans.

Therefore, based on the above, the defendant is entitled to summary judgment as a matter of law in regard to the plaintiff's contention that it violated 15 U.S.C. § 1639(a)(1); 15 U.S.C. § 1639(h); 12 C.F.R. § 226.32 or 12 C.F.R. § 226.31.

### D. The plaintiff's Equal Credit Opportunity Act contentions

The plaintiff also contends that the defendant violated the Equal Credit Opportunity Act in connection with both mortgage loans. 15 U.S.C. §§ 1691a-1691f; strategy C.F.R. §§ 202.1- 202.16.

Section 1691(a)(1) provides, "It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction... on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract) ...." 5 U.S.C. §§ 1691a(1). Associated regulations provide, "Discriminate against an applicant means to treat an applicant less favorably than other applicants." 12 C.F.R. § 202.2(n).[7]

---

[7] A plaintiff may prove unlawful discrimination under the ECOA by one or more of three theories. Those are: (1) direct evidence of discrimination; (2) disparate impact analysis; and (3) disparate treatment analysis. <u>Shiplet v. Veneman</u>, 2009 WL 1439305, *21 (D. Mont. 2009);

13

A plaintiff bears the initial burden of establishing a prima facie case of discrimination. If the plaintiff establishes a prima facie case of discrimination under the ECOA, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory actions. If the defendant then successfully articulates a legitimate, non-discriminatory reason for its action, the plaintiff will have to prove, by preponderance of evidence, that the reasons offered by defendant were a pretext. <u>Shiplet v. Veneman</u>, 2009 WL 1439305, *30 (D. Mont. 2009); <u>Cooley v. Sterling Bank</u>, 280 F. Supp. 2d 1331, 1338 (M.D. Ala. 2003); <u>Davis v. Strata Corp.</u>, 242 F. Supp. 2d 643, 651-652 (D.N.D. 2003); <u>Faulkner v. Glickman</u>, 172 F. Supp. 2d 732, 737 (D. Md. 2001); <u>Sallion v. SunTrust Bank, Atlanta</u>, 87 F. Supp. 2d 1323, 1329 (N.D. Ga. 2000); <u>A.B. & S. Auto Service, Inc. v. South Shore Bank of Chicago</u>, 962 F.Supp. 1056, 1060-1061 (ND. Ill. 1997); <u>Resolution Trust Corp. v. Townsend Associates Ltd. Partnership</u>, 840 F.Supp. 1127, 1142 n.14 (E.D. Mich. 1993); <u>In re DiPietro</u>, 135 B.R. 773, 776 (Bankr. E.D. Pa. 1992); <u>Mercado Garcia v. Ponce Federal Bank, F.S.B.</u>, 779 F.Supp. 620, 628 (D.P.R. 1991); <u>In re Farris</u>, 194 B.R. 931, 937 (Bankr. E.D. Pa. 1996).

The ultimate burden of persuasion however, remains on the plaintiff throughout. <u>Texas Dept. of Comm. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

Mr. Bailey, the defendant's representative who participated in both transactions with the plaintiff, testified in his affidavit that there was no discrimination practiced on the plaintiff with respect to either mortgage loan. He stated, "There was no discrimination of any kind intended or affected by JF against Ms. Macklin in any aspect of either mortgage loan." <u>Affidavit of Ward Bailey</u> (attached to <u>Jefferson Finance, LLC's Pretrial Statement and Motion for Summary Judgment</u> filed on January 14, 2008 (A.P. 08-00013-BGC-13, Proceeding No. 52)).

The plaintiff's complaint does not specify, explain, or describe how the defendant violated the ECOA, or what particular provisions of the statutes which comprise that legislation or the regulations promulgated pursuant to it were violated. It also does not identify what conduct of the defendant may have violated any provision of those statutes and regulations.

Similarly, in her deposition, the plaintiff was not specifically asked to explain her ECOA claim. Instead, she was asked to explain what, if anything the defendant was guilty of. She was asked if the defendant did any harmful things to her and, if so, what those were, and if there were things, how she was harmed by that conduct. In

---

<u>Faulkner v. Glickman</u>, 172 F. Supp. 2d 732, 737 (D. Md. 2001); <u>Sallion v. SunTrust Bank, Atlanta</u>, 87 F. Supp. 2d 1323, 1327 (N.D. Ga. 2000); <u>A.B. & S. Auto Service, Inc. v. South Shore Bank of Chicago</u>, 962 F. Supp. 1056, 1060 (ND. Ill. 1997); <u>Williams v. First Federal Sav. and Loan Ass'n of Rochester</u>, 554 F.Supp. 447, 449 (N.D.N.Y. 1981).

14

response, she was unable to explain or describe anything inappropriate or harmful. In contrast, she stated that she had not suffered injury or damages as a result of anything done by the defendant. She testified:

> Q. Tell me what, if anything, you contend or believe has been done wrong by Jefferson Finance with regard to either of these loans?
>
> A. I'm sorry, I haven't – I don't – I find some fault in some of them, but right now my mind ain't – ain't clear right now. My head's killing me. But other than that, I don't find too much fault in it.
>
> Q. You don't know of anything that they've done wrong yourself?
>
> A. No. sir.
>
> Q. There's been a – somewhere there's something in some of the paperwork talking about damages, but have you had any losses or damages or expenses as a result of anything Jefferson Finance has done or Mr. Bailey has done?
>
> A. No.

Deposition of Elnora Macklin at 78-79, A.P. Docket No. 52-3 (attached to Jefferson Finance, LLC's Pretrial Statement and Motion for Summary Judgment).

In an attempt to clarify the plaintiff's position with respect to the ECOA claim, and discover the evidentiary basis of the plaintiff's contentions, the defendant promulgated the following interrogatory to the plaintiff:

> 6. Describe in detail each act and omission you claim is a violation of the Equal Credit Opportunity Act (ECOA), including, but not limited to, the following details in your description of each:
>
> A. The nature, details and specifics of the act or omission
> B. the date(s) it allegedly occurred
> C. the individual(s) you allege committed the act or omission
> D. the names and addresses of each person with any knowledge or information about the act or omission and the substance of their knowledge and information
> E. a description of each document that reflects or relates to the act or omission and an explanation of how that document reflects or relates to the act or omission
> F. the specific statutory provision and/or regulation that you allege the act or omission violates
> G. the type, nature, and dollar amount of each injury, loss,

15

> expense, and other adverse result that you claim as
> damages for the act or omission.

Interrogatories and Requests for Production to the Debtor at 4, A.P. Docket No. 15.

> In response to that interrogatory, the plaintiff stated:

> The debtor and co-debtor were offered less favorable terms on both
> properties based on race. Based on the creditor's failure to obtain
> information regarding the debtor and co-debtor's income and expenses
> and the debtor's and co-debtor high equity to loan ratio the creditor
> violated the ECOA and their fiduciary duty to the debtor and the co-debtor.
> Both mortgage loans were unreasonably favorable to the creditor based
> on the equity in the property and the fact that the creditor knew or should
> have known by ascertainment that the debtor's and co-debtor's income
> and expenses did not support both mortgages on the terms offered to
> them.

Debtor's Amended and Continuing Response to Defendant's Interrogatories at 6, A.P.
Docket No. 45.

> The plaintiff's response to the defendant's interrogatory No. 6 clearly specifies
that she is claiming racial discrimination under the ECOA.  However, in the affidavit that
she filed in opposition to the defendant's present motion, the plaintiff made the following
statements with respect to all of the claims made by her in her complaint, and did not
direct those statements specifically or strictly to her ECOA claim:

> I was and continue to be an elderly lady with no experience in the
> mortgage lending business or the valuation business and it is my opinion
> that the defendant took unfair advantage of me because of my age and
> limited knowledge in the mortgage lending field.

> It is my opinion that the only reason the Defendant made both loans to me
> was because of the amount of equity in both homes and the Defendant's
> superior knowledge regarding my inability to pay the loans under the
> terms given to me because my source of income was limited because of
> my age and the fact that I was receiving social security.

Plaintiff's Partial Response Pursuant to Rule 56(e) and (f) FRCP; Affidavit and
Evidence in Support of Plaintiff's Opposition to Defendant's Motion for Summary
Judgment and Defendant's Motion to Dismiss at 3, A.P. Docket No. 57 (emphasis
added).

> Those statements, although not specifically directed to the plaintiff's ECOA
claim, do not mention race or racial discrimination, but instead focus on the plaintiff's

16

age, thus suggesting that her ECOA claim may be based on age discrimination instead of or in addition to racial discrimination.  That question is however resolved because there is no evidence or proof of discrimination of either.

The information contained in the plaintiff's deposition, affidavit and answers to interrogatories represents the only "evidence" which stands in opposition to the defendant's summary judgment motion.  The deposition does not support the plaintiff because she was unable to describe any malfeasance or statutory violation by the defendant.  Her answers to the defendant's interrogatories and affidavit contain only her personal conclusions, conclusory allegations, bare assertions, and subjective beliefs.  They do not include any specific facts to support those conclusions, allegations and beliefs.

Under the summary judgment standard in this Circuit, a nonmoving party's response to a summary judgment motion must set forth specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The party's personal conclusions, conclusory allegations, bare assertions, and subjective beliefs are of no probative value and will not suffice to prevent summary judgment from being granted against her.[8]

---

[8] "If the nonmoving party's response to the summary judgment motion consists of nothing more than mere conclusory allegations, then the Court must enter summary judgment in the moving party's favor."  Johnson v. Fleet Finance, Inc., 4 F.3d 946, 949 (11th Cir. 1993).  "This court has consistently held that conclusory allegations without specific supporting facts have no probative value."  Evers v. General Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985).  "Bare assertions ... are insufficient to create an issue ...."  Gordon v. Terry, 684 F.2d 736, 743 (11th Cir.1982), cert. denied, 459 U.S. 1203 (1983).  "Conclusory allegations such as these, without specific supporting facts, have no probative value."  Id. at 744.  "The affidavit constitutes nothing more than a recital of unsupported allegations, conclusory in nature.  As such it is insufficient to avoid summary judgment."  Broadway v. City of Montgomery, 530 F.2d 657, 660 (5th Cir.1976).  "Conclusory statements, unsubstantiated by facts in the record, will normally be insufficient to defeat a motion for summary judgment."  Sellers v. American Broadcasting Co., 668 F.2d 1207, 1209 n.3 (5th Cir. 1982).  "Defendants' argument on appeal, that affidavits introduced by them to oppose the government's motion for summary judgment created a fact issue as to the burdensomeness of the reports, is without merit in light of the fact that the proffered affidavits are merely conclusory in nature."  United States v. W. H. Hodges & Co., Inc., 533 F.2d 276, 278 (5th Cir. 1976).  "Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.  Comer v. City of Palm Bay, Fla., 265 F.3d 1186, 1192 (11th Cir. 2001)(quoting Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir.1981).  "If the party's response consists of nothing more than a repetition of his conclusory allegations, the district court must enter summary judgment in the moving party's favor."  Peppers v. Coates, 887 F.2d 1493, 1498 (11th Cir. 1989).  "The purpose of summary judgment is to determine, on the basis of evidence that must be forthcoming, whether there is any dispute as to an issue of material fact, as distinguished from a party's mere allegations.  When [the non-movant] was unable to respond to the court's notice with anything more than a repetition of his conclusional allegations, summary judgment for the defendants was not only proper but required.  Morris v.

17

In addition to their lack of probative value, the conclusions the plaintiff reached in her answers to the interrogatories and in her affidavit do not suggest racial bias, age bias, or discrimination of any sort as is necessary for an ECOA cause of action.[9] None of the conclusory and generalized allegations made by the plaintiff say or suggest that: (1) the defendant specifically targeted her because of her race or age; (2) the defendant granted loans to non-minority or non-elderly applicants on more advantageous terms; (3) the non-minority or non-elderly applicants, if any, who received loans from the defendant on more advantageous terms were financially identical to the plaintiff; (4) the loans, if any, granted to those non-minority or non-elderly applicants were similar in amount, collateralization, and length to the loans granted to the plaintiff; or (5) the plaintiff was financially qualified to receive better, less onerous loans than those she received. And finally, the plaintiff did not identify a policy, procedure, or practice of the defendant that has a significantly greater discriminatory impact on members of a protected class.

In contrast, the materials submitted by the defendant, including the plaintiff's deposition and Mr. Bailey's affidavit, refute the plaintiff's unsupported assertion that she could not afford to pay the loans when she took them.[10] That evidence supports the conclusion, given the plaintiff's intent to rent both properties, that she would have the ability to pay the loans, a conclusion that the defendant, through Mr. Bailey, could have reached at the time the loans were made. That evidence is discussed below.

About a year after receiving the loan on the Avenue Y property, the plaintiff began renting it for $300 per month. That rent exceeded her $230 per month mortgage payment. Since then, the plaintiff continued to lease the property and collect rent, which increased to $350 per month sometime before she received the second loan.[11]

_____

Ross, 663 F.2d 1032, 1034 (11th Cir.1981), cert. denied, 456 U.S. 1010 (1982). See also, Schwarz v. City of Treasure Island, 544 F.3d 1201, 1224-1225 (11th Cir. 2008)(same); Chanda v. Engelhard/ICC, 234 F.3d 1219, 1223 (11th Cir. 2000)(same); Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000)(same); Hilburn v. Murata Electronics North America, Inc., 181 F.3d 1220, 1227 -1228 (11th Cir. 1999)(same); Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642 (11th Cir. 1998)(same); Benton-Volvo-Metaire, Inc. v. Volvo Southwest, Inc., 479 F.2d 135, 139 (5th Cir. 1973)(same).

[9] The plaintiffs allegations are in essence that the defendant, in order to take the equity in her property, took "unfair advantage" of her advanced age and lack of commercial sophistication by giving her a loan that she could not afford to pay.

[10] As stated above, the plaintiff's contention that she could not afford to pay the loans when she took them is the cornerstone of her theory of liability against the defendant.

[11] The reason the plaintiff stopped using the rent to make her mortgage payment is unknown to the Court.

That rent is of course key in any review of the loan process. As stated above, before she received the loan, the plaintiff told Mr. Bailey she intended to rent the Avenue Y property. It is apparent then, despite her unsupported allegations to the contrary, that with that income the plaintiff knew she had the means to make the mortgage payment on the Avenue Y property. Consequently, at the time the loan was taken, Mr. Bailey would have also known that the plaintiff would be able make the mortgage payments with the rent she would receive from her tenant.

The situation in regard to the Spring Street property is similar. Again, the plaintiff told Mr. Bailey before she took the loan for the Spring Street property that she and her sister intended to rent that property, as she had with the Avenue Y property. Mr. Bailey therefore had every reason to expect that the anticipated rent from the Spring Street house would more than satisfy that mortgage, especially given the plaintiff's successful track record in renting the Avenue Y house. This is particularly true given that because her sister was a co-obligor on that note, the plaintiff would have to shoulder only one-half of the payment, that is, $117.50. But as the parties and the Court know, the plaintiff did not make the mortgage payments. She now complains that her failure to make the payments is evidence that she did not have that the ability to make the payments when she obtained the loan. For two reasons, the evidence demonstrates otherwise.

One, rather than renting the Spring Street property as Ms. Macklin and Ms. Barnfield told Mr. Bailey they would, they decided to allow their adult granddaughter to reside in the property rent free. That decision, after the fact and not anything the defendant did, impacted the sisters' ability to make the mortgage payments. They, not the defendant, altered the equation. How the defendant could have anticipated that decision is not evident.

Two, according to Mr. Bailey's affidavit, the plaintiff made payments on the Spring Street mortgage until about October 2006. According to the plaintiff's testimony, it was at about that time that her sister verbally abandoned interest in the property leaving the plaintiff to shoulder the entire mortgage.

Both of the above suggest that the plaintiff's inability to pay did not come from anything attributable to the defendant. In addition, it appears that the sisters' combined income would be sufficient to meet the Spring Street mortgage payments. The monthly mortgage payment on the Spring Street property was $235. According to the loan application submitted by Ms. Macklin and Ms. Barnfield, their total monthly income was $2,537. The plaintiff's income was $1,287, which included the $350 from rental on the Avenue Y house and social security of $937. Her sister's income was $1,250, which included social security of $750 and employment income of $500. It is impossible to infer from those figures, without more, that Mr. Bailey had reason to expect that the sisters would be unable to pay $235 per month between them to satisfy the Spring Street mortgage.

19

These same materials refute the plaintiff's representation that Mr. Bailey neglected to obtain any information from her and her sister about their incomes in connection with the loan on the Spring Street property. The plaintiff admitted in her deposition that both she and her sister executed the loan application in connection with the Spring Street loan which contained the above income information. In contrast, that document does not contain any information with respect to the sisters' expenses, which is consistent with what she stated in her answer to the defendant's interrogatory No. 6.

Finally, the plaintiff contends that the defendant had a predatory design on the equity in each of the properties when the loans were made. However, that inference does not necessarily follow since ample equity is first a substantial benefit to the borrower. Ample equity allows the borrower to sell the property to pay the mortgage if payments cannot be made.

Therefore, based on the above, the defendant is entitled to summary judgment as a matter of law in regard to the plaintiff's Equal Credit Opportunity Act allegations. The plaintiff's responses to the defendant's present motion consist only of the conclusions, allegations, bare assertions, and subjective beliefs contained in her answers to her interrogatories and in her affidavit. According to the decision of the Court of Appeals for the Eleventh Circuit in Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642 (11th Cir. 1998) such "evidence" is not sufficient as in Carter where the affiants' statements containing conclusory and generalized allegations of racial bias, including statements that the facility "was a racially hostile environment," or that "there was a racially biased attitude by management towards minority black employees," were properly struck by the district court and could not prevent summary judgment. Id.

### E. The plaintiff's Real Estate
### Settlement Procedures Act contentions

The plaintiff also contends that the defendant violated the Real Estate Settlement Procedures Act of 1974 in connection with both mortgage loans. 12 U.S.C. §§ 2601-2617; 12 C.F.R. §§ 3500.1-3500.23. She did not, however, specify, explain, or describe in her complaint how the defendant violated any of the statutes which comprise that legislation or the regulations promulgated pursuant to it, or what particular provisions of those statutes and regulations were violated, or what conduct of the defendant may have violated any provision of those statutes and regulations. However, in her answers to the defendant's interrogatories, she claims that the defendant violated RESPA by failing "to provide a 'good faith estimate' of settlement costs to the debtor and the co-debtor regarding both loans," which would be a violation of 26 U.S.C. § 2603; and failing "to provide the booklet explaining the settlement costs," which would be a violation of 26 U.S.C. § 2604(c) and (d). Debtor's Amended and Continuing Response to Defendant's Interrogatories at 4, A. P. Docket No. 52-7.

Case 08-00013-BGC    Doc 60    Filed 09/23/09    Entered 09/23/09 07:55:56    Desc Main
Document      Page 20 of 27

Unfortunately for the plaintiff, there is no private cause of action or civil remedy for violations of those particular statutes.[12]  Moreover, those statutes do not apply to, "extensions of credit... primarily for business, commercial, or agricultural purposes...." 26 U.S.C. § 2606(a)(1).  Section 2606(b) commands, "In prescribing regulations under section 2617(a) of this title [26 U.S.C. § 2617(a)], the Secretary shall ensure that, with respect to subsection (a) of this section, the exemption for credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes, as provided in subsection (a)(1) of this section shall be the same as the exemption for such credit transactions under 1603(1) of Title 15."  26 U.S.C. § 2606(b) (parenthetical added).  Section 3500.5(b)(2) of Regulation X provides that, "An extension of credit primarily for a business, commercial, or agricultural purpose, as defined by Regulation Z, 12 C.F.R. 226.3(a)(1)" is exempt from application of the RESPA.  12 C.F.R. § 3500.5(b)(2).  "Persons may rely on Regulation Z in determining whether the exemption applies."  Id.  And, as stated before, according to the official interpretation of Regulation Z by the staff of the Board of Governors of the Federal Reserve, "Credit extended to acquire, improve, or maintain rental property (regardless of the number of housing units) that is not owner-occupied is deemed to be for business purposes," for purposes of the Truth and Lending Act, and, by virtue of 26 U.S.C. § 2606(b), for purposes of the RESPA.  Supplement I to Part 226 – Official Staff Interpretations, Effective January 1, 2009, 12 C.F.R. Pt. 226, Supp. I, Subpart A, Section 226.3–Exempt Transactions, 3(a) Business, commercial, agricultural, or organizational credit, paragraph 3.

Therefore, based on the above, the defendant is entitled to summary judgment as a matter of law on the plaintiff's Real Estate Settlement Procedures Act contentions because the plaintiff would not have a cause of action for violations of 26 U.S.C. §§ 2603 or 2604, even if there was such a thing.  She incurred both loans for the purpose of acquiring property that she intended to rent, never intended to occupy, and has never occupied.

### F.  The plaintiff's omnibus allegation

Finally, the plaintiff's complaint contains the following omnibus allegation: "the Defendant made the loans because of the considerable amount of equity in the homes without accessing the Plaintiff's ability to repay said loan which is in direct violation of federal laws, state unfair trade practice laws, usury, unconscionability, and fraud." Complaint at 3.  A.P. Docket No. 1.  Like her previous allegations, the plaintiff again did not: (1) specify what law was violated by that conduct, whether statutory or Alabama

---

[12] Hardy v. Regions Mortgage, Inc., 449 F.3d 1357, 1360 (11th Cir. 2006); Collins v. FMHA-USDA, 105 F.3d 1366, 1368 (11th Cir. 1997); Lofton v. Diolosa, 2008 WL 2994823, *9 n.10 (M.D. Pa., July 31, 2008); Sanborn v. American Lending Network, 506 F. Supp. 2d 917, 923 (D. Utah 2007); Sturm v. Peoples Trust & Savings Bank, 713 N.W.2d 1, 4 (Iowa 2006); Morrison v. Brookstone Mortgage Co., 415 F. Supp. 2d 801, 806 (S.D. Ohio 2005); Reese v. 1st Metropolitan Mortgage Co., 2003 WL 22454658, *4 (D. Kan., Oct. 28, 2003).

case law; (2) specify what law makes that conduct actionable; or (3) identify any misrepresentations, deceptions or fraudulent nondisclosures made or orchestrated by the defendant that would be actionable as fraud under Alabama law; or (4) other wise elaborate further.

At the time these allegations were made, the defendant was not clear of their meaning. In an effort to clarify the plaintiff's omnibus contention, and to discovery what evidence, if any, the plaintiff had to support it, the defendant propounded the following interrogatories:

8. Describe in detail each act and omission you claim is a violation of any state unfair trade practices law, including, but not limited to, the following details in your description of each:

   A. The nature, details and specifics of the act or omission
   B. the date(s) it allegedly occurred
   C. the individual(s) you allege committed the act or omission
   D. the names and addresses of each person with any knowledge or information about the act or omission and the substance of their knowledge and information
   E. a description of each document that reflects or relates to the act or omission and an explanation of how that document reflects or relates to the act or omission
   F. the specific statutory provision and/or regulation that you allege the act or omission violates
   G. the type, nature, and dollar amount of each injury, loss, expense, and other adverse result that you claim as damages for the act or omission.

9. Describe in detail each act and omission you claim is a violation of any usury law, including, but not limited to, the following details in your description of each:

   A. The nature, details and specifics of the act or omission
   B. the date(s) it allegedly occurred
   C. the individual(s) you allege committed the act or omission
   D. the names and addresses of each person with any knowledge or information about the act or omission and the substance of their knowledge and information
   E. a description of each document that reflects or relates to the act or omission and an explanation of how that document reflects or relates to the act or omission
   F. the specific statutory provision and/or regulation that you allege the act or omission violates
   G. the type, nature, and dollar amount of each injury, loss,

22

expense, and other adverse result that you claim as
damages for the act or omission.

10.     Describe in detail each act and omission you claim is a violation of
any fraud statute or law, including, but not limited to, the following
details in your description of each:

A.      The nature, details and specifics of the act or omission
B.      the date(s) it allegedly occurred
C.      the individual(s) you allege committed the act or omission
D.       the names and addresses of each person with any
knowledge or information about the act or omission and the
substance of their knowledge and information
E.      a description of each document that reflects or relates to the
act or omission and an explanation of how that document
reflects or relates to the act or omission
F.       the specific statutory provision and/or regulation that you
allege the act or omission violates
G.       the type, nature, and dollar amount of each injury, loss,
expense, and other adverse result that you claim as
damages for the act or omission.

11.  Describe in detail each act and omission you claim is a violation of or
failure to comply with any other federal [or] state law, including, but not
limited to, the following details in your description of each:

A.      The nature, details and specifics of the act or omission
B.      the date(s) it allegedly occurred
C.      the individual(s) you allege committed the act or omission
D.       the names and addresses of each person with any
knowledge or information about the act or omission and the
substance of their knowledge and information
E.      a description of each document that reflects or relates to the
act or omission and an explanation of how that document
reflects or relates to the act or omission
F.      the specific statutory provision and/or regulation that you
allege the act or omission violates
G.      the type, nature, and dollar amount of each injury, loss,
expense, and other adverse result that you claim as
damages for the act or omission.

<u>Interrogatories and Requests for Production to the Debtor</u> at 4-6, A.P. Docket No. 15.

     In response to each of those interrogatories, the plaintiff referred the defendant
to her response to its interrogatory No. 5.  She answered:

23

**8.**

| | |
|---|---|
| **A.** | See response No. 5. |
| **B.** | See response No. 5. |
| **C.** | See response No. 5. |
| **D.** | See response No. 5. |
| **E.** | See response No. 5. |
| **F.** | See response No. 5. |
| **G.** | See response No. 5. |

**9.**

| | |
|---|---|
| **A.** | See response No. 5. |
| **B.** | See response No. 5. |
| **C.** | See response No. 5. |
| **D.** | See response No. 5. |
| **E.** | See response No. 5. |
| **F.** | See response No. 5. |
| **G.** | See response No. 5. |

**10.**

| | |
|---|---|
| **A.** | See response No. 5. |
| **B.** | See response No. 5. |
| **C.** | See response No. 5. |
| **D.** | See response No. 5. |
| **E.** | See response No. 5. |
| **F.** | See response No. 5. |
| **G.** | See response No. 5. |

**11.**

| | |
|---|---|
| **A.** | See response No. 5. |
| **B.** | See response No. 5. |
| **C.** | See response No. 5. |
| **D.** | See response No. 5. |
| **E.** | See response No. 5. |
| **F.** | See response No. 5. |
| **G.** | See response No. 5. |

Debtor's Amended and Continuing Response to Defendant's Interrogatories at 4-5, A.P. Docket No. 45.

The relevant part of the plaintiff's response to interrogatory No. 5 was:

5. A-G: The Court's record reveals that the debtor is 83 years old and was an older American at the time of the consummation of both loans. The creditor knew or should have known that the debtor and co-debtor were experiencing a decline in mental acuity.

24

That the debtor and co-debtor respectfully request additional time to
amend this interrogatory based on the fact that the debtor has been ill and
hospitalized for three weeks and is expected to be re-admitted to the
hospital in the very near future for surgery.

Debtor's Amended and Continuing Response to Defendant's Interrogatories at 2, A.P.
Docket No. 45.[13]

The plaintiff's answer to the defendant's interrogatories 8-11 included that she
was elderly when both loans were made, was "experiencing a decline in mental acuity"
when both loans were made, and that Mr. Bailey should have known she was
"experiencing a decline in mental acuity."   These statements are conclusions and do
not constitute evidence of any sort. They merely describe the plaintiffs status or
condition.  As such, they cannot serve to preclude summary judgment for the defendant
on the omnibus count of her complaint.

The fact that the plaintiff was elderly, and assuming she was "experiencing a
decline in mental acuity", when the loan transactions occurred, does not suggest that
the defendant is guilty of anything.  Furthermore, common sense demonstrates that,
"experiencing a decline in mental acuity" is relative terminology which, without proof of
degree and nature, cannot be equated with mental incompetence, weakness,
vulnerability, or ineptitude, even on a theoretical or philosophical level.

The fact that she was elderly when the loans were made does not establish that
she was non compos mentis.  It does not establish that she did not know and
understand the terms of the documents she executed, or that she was susceptible to
agreeing to something that she did not mean to agree to.  And it certainly does not
establish that she would have done anything differently had she not been elderly.

As indicated above, the plaintiff's affidavit does not point to any evidence in the
record, or contain any testimony of facts of any sort, that might tend to prove or suggest
that the defendant was guilty of violating any federal or state laws, usury,
unconscionability, or fraud in connection with either transaction.  Instead, like her
answers to the defendant's interrogatories, the plaintiff's affidavit contains nothing more
than general conclusions and allegations which have no probative value and are
insufficient to withstand the defendant's summary judgment motion.

The plaintiff's affidavit does express her conclusion that the defendant "took
unfair advantage of... [her] because of... [her] age and limited knowledge in the
mortgage lending field."  Plaintiff's Partial Response Pursuant to Rule 56(e) and (f)
FRCP; Affidavit and Evidence in Support of Plaintiff's Opposition to Defendant's Motion

---

[13] The remainder of the plaintiff's answer to interrogatory No. 5 is germane only to the
plaintiff's HOEPA allegations, the actual subject of interrogatory No. 5.

for Summary Judgment and Defendant's Motion to Dismiss, A.P. Docket No. 57 (parentheticals added).  Again, that is not evidence that the defendant violated any law, or is otherwise guilty of usury, unconscionability, or fraud.  In addition, "took unfair advantage of" is not a legal term of art, but merely common parlance, which has no legal significance absent factual and evidentiary clarification that connects it with some legal prohibition.  In this context, the plaintiff does not provide any facts or evidence to prove that she was "taken advantage of," and that her being "taken advantage of" was illegal and actionable.  In addition, she did not attempt to identify what laws or statutes were violated by her being "taken advantage of."  But even if she could identify such laws, the mere allegation that she was "taken advantage of" is prima facie reputed by the documents which she signed in connection with both transactions.  Those clearly reflect the terms of those transactions.  In fact, she does not contend that either of those transactions is anything other that what it purports to be on its face or that the terms of those transactions are anything other than what she agreed to.  Furthermore, the plaintiff does not suggest that Mr. Bailey told her anything that was contrary to the expressed terms in those documents or that he otherwise misled her in any way or hid anything from her.

In regard to the plaintiff's allegations about the amount of equity in the two properties, the plaintiff's affidavit again expresses conclusions.  The plaintiff comments that the only reason the defendant made the loans to her was because: (1) there was a great deal of equity in each of the properties over and above the amounts of the loans and (2) the defendant knew that she would be unable to pay the loans.  Those conclusory allegations, to reiterate, lack any probative value and are insufficient to prevent summary judgment from being granted in favor of the defendant.

Moreover, as indicated before, ample equity in relation to a loan amount does not naturally encourage an inference of nefarious conduct on the part of a lender or predatory lending.  To the contrary, substantial equity will enable the mortgagor to sell the property if payments cannot be made.

In regard to the plaintiff's allegations in her omnibus contention that she lacked the financial ability to make the payments on the first loan or that the defendant had reason to believe that she would be unable to pay the first loan, as discussed above, it was always the plaintiff's intent to rent the property.  She did so with the Avenue Y property.  She and her sister chose not to do so with the Spring Street property.  What the defendant knew with respect to the loans is exactly what the plaintiff told Mr. Bailey, that is, the properties would be rented.  From that, Mr. Bailey, and the defendant, could reasonably assume that the mortgage payments could be made.[14]

---

[14] Moreover, the fact that there was equity in the Avenue Y property when the first loan was made gave Mr. Bailey every reason to believe that, if push came to shove, the plaintiff would be able to sell the property to pay the mortgage, in which case she, and not the defendant, would pocket the "equity."

And finally, the plaintiff did not produce any evidence that she and her sister lacked the financial ability to make the payments on the second loan or that the defendant had reason to believe that she and her sister would be unable to pay the second loan. By applying for the loan, the sisters implicitly represented that they could make the monthly mortgage payments and the defendant had every right to rely on that representation. Also, they were receiving $2,537 in monthly income between them, which was known to Mr. Bailey by reason of his having solicited a loan application from them.

In conclusion, Mr. Bailey had reason to believe that the sisters would be able to make the loan payments from the anticipated rent. Furthermore, because there was substantial equity in the property, Mr. Bailey could have rightfully assumed that the sisters would be able to sell the property and pay off the mortgage balance if they should become incapable of making the monthly mortgage payments. In addition, the evidence submitted by the defendant indicates that the sisters' default on the loan payments can be attributed to their decision not to rent the Spring Street property to a paying tenant, an event that coincided with the plaintiff's sister's decision to abandon interest in the property and stop making her half of the mortgage payment.

## VII. Conclusion

Based on the above, the Court finds that there are no genuine issues of material fact and that the defendant is entitled to summary judgment as a matter of law. An order will be entered in conformity with this memorandum opinion.

Dated: September 23, 2009          /s/Benjamin Cohen_____
                                    BENJAMIN COHEN
                                    United States Bankruptcy Judge